UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HALBERT TURNER,                                         :
                                                       :
                    Plaintiff,                         :          12-cv-7048 (NSR)
        -against-                                      :
                                                       :          OPINION AND ORDER
WLADYSLAW SIDOROWICZ, GENEVIEVE                         :
SWITZ, GINGER EGGLER, SHARON LILLEY,                    :
HOLLY MILLER, LYNN LILLEY, LESLIE                       :
MALIN, and SHAWN KEMP                                   :
Individually and in their Official Capacities,         :
                                 Defendants.            :
-----------------------------------------------------------X
NELSON S. ROMÁN, United States District Judge

Halbert Turner, a state prisoner proceeding *pro se* ("Plaintiff"), brings this action

pursuant to 42 U.S.C. §1983, alleging violations of his constitutional rights during his

incarceration at Sullivan Correctional Facility[1] ("Sullivan") against Sullivan employees

Wladyslaw Sidorowicz, Director of Health Services ("Dr. Sidorowicz"), Genevieve Switz,

Physician Assistant ("PA Switz"), Ginger Eggler, Nurse Administrator ("NA Eggler"), Sharon

Lilley, former Nurse Administrator ("NA Lilley"), Holly Miller, Nurse ("Nurse Miller"), Lynn

Lilley, Deputy Superintendent of Administration ("DSA Lilley"), Leslie Malin, former Deputy

Superintendent of Programs ("DSP Malin"), and Shawn Kemp, Correction Officer ("CO Kemp")

(together, "Defendants"). Before the Court is Defendants' Motion to Dismiss Plaintiff's

Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the following reasons, Defendants'

Motion to Dismiss is GRANTED in part and DENIED in part.

---

[1] Plaintiff is currently incarcerated at Auburn Correctional Facility, where he has been since February 28, 2013.
Docket No. 18.

## I.   Factual Background[2]

### A.  Discontinuance of Plaintiff's Tramadol Prescription

Plaintiff's claims are that certain individuals at Sullivan denied Plaintiff adequate medical treatment, inappropriately revoked his religious diet, and falsified reports and other documents. Plaintiff alleges that on April 10, 2009, Nurse Miller "willfully, purposefully and maliciously falsified an official report" regarding Plaintiff in which she stated that Plaintiff was frisked under suspicion of pocketing tramadol,[3] a pain medication that Plaintiff was taking twice daily for back pain since August 2005, and found to have a cup with a white residue.  Relying on this allegedly false report, Dr. Sidorowicz discontinued Plaintiff's prescription for tramadol.  Plaintiff states that over a period of over six months, Dr. Sidorowicz continued to refuse Plaintiff the medication and failed to issue Plaintiff substitute medication.  Plaintiff alleges that because the "highly-addictive" prescription was discontinued abruptly, contrary to the manufacturer's recommendations, he was forced to detox cold-turkey. Over the course of six months allegedly without treatment, Plaintiff asserts that he suffered severe pain.

On June 22, 2009, Plaintiff filed a grievance to the Inmate Grievance Resolution Committee regarding the discontinuance of Ultram. Plaintiff's Opposition Exhibit ("Opp'n Ex.") 8. Shortly after, Plaintiff went to sick call and requested that his medication be reinstated. Dr. Sidorowicz refused to reinstate the prescription on July 14, 2009 and Plaintiff alleges he refused to do so in retaliation for Plaintiff's grievance. On July 27, 2009, Dr. Sidorowicz once again denied Plaintiff's request to have his medication restored. Plaintiff alleges that Dr. Sidorowicz

---

[2] The following facts are drawn from Plaintiff's Amended Complaint, Dock. 11, unless otherwise stated.

[3] Tramadol is the generic name for the medication Ultram, which is a drug for the management of moderate to moderately severe pain. RxList, Ultram, http://www.rxlist.com/ultram-drug.htm (last visited February 14, 2014).

directed a nurse to backdate Plaintiff's medical records to falsify the date on which Plaintiff's

tramadol had been discontinued. Plaintiff filed another grievance on September 9, 2009,

complaining of the continued failure to provide him with tramadol. A further grievance was filed

on October 23, 2009, in which Plaintiff complained of continued lack of attention of the medical

department to address his medication issue.  Dr. Sidorowicz reinstated Plaintiff's medication on

October 30, 2009.

### B.  Administration of Tramadol

When Plaintiff began receiving tramadol again, it was administered crushed rather than

as a pill. Plaintiff did not want to receive the medication crushed and presented Dr. Sidorowicz

with certain documentary evidence that it was dangerous to ingest crushed Tramadol Immediate

Release. Dr. Sidorowicz told Plaintiff that the medication was administered in crushed form in

order to ensure that inmates did not smuggle their medication outside of the clinic area. Plaintiff

alleges that NA Eggler falsified her response to the grievance committee, stating that Plaintiff

was receiving tramadol rather than tramadol immediate release.  Plaintiff believes that he was

receiving tramadol immediate release because documents Plaintiff received from the prison's

pharmacy state that the pharmacy does not stock tramadol. *Id* at p. 5. Plaintiff claims that

tramadol immediate release is dangerous to ingest crushed. Opp'n Ex. 24 p. 7 (Manufacturer's

instructions for tramadol immediate release state, "Do not crush, chew, break, or open a

controlled-release, delayed-release, or extended-release tablet or capsule.").

Plaintiff alleges that in addition to Dr. Sidorowicz, NA Lilley and DSA Lilley falsified

records in order to mislead Plaintiff and the rest of the prison population regarding the dangers of

taking tramadol in crushed form. Specifically, Plaintiff alleges that NA Lilley and Dr.

Sidorowicz "attempt[ed] to fabricate alibis and further falsify official records" regarding the

decision to crush Ultram before giving it to prisoners. Plaintiff alleges that the order to crush the prescription did not come from the central office, as prison officials stated, but was a unilateral decision made by medical personnel at Sullivan.

### C. Kosher Diet

Plaintiff's religious beliefs are based on the Old Testament and as such, Plaintiff follows a kosher diet and was receiving the cold alternative diet ("CAD") at Sullivan. On January 13, 2011, Plaintiff received a memo from DSP Malin and DSA Lilley informing him that he would no longer be receiving the CAD because it was reported that Plaintiff took two pieces of cake and cool-aid from the regular meal line on January 4, 2011. Opp'n Ex. 46. Plaintiff claims that such report of his infraction does not exist and that DSP Malin and DSA Lilley acted in retaliation for the grievances that Plaintiff filed against the medical department. Plaintiff claims that DSA Lilley told Plaintiff that it was not necessary to file a misbehavior report or conduct a hearing before "imposing the sanction[] of removing . . . your Kosher Meal" and that if Plaintiff wanted to resume his kosher meals, he "should just change your religious denomination from Messianic Jew, and convert to Orthodox/Conservative Judaism[.]" Am. Compl. ¶47.

### D. Plaintiff's TENS Unit

On April 7, 2011, while attending an appointment to have his knee braces reissued, Plaintiff had a disagreement with PA Switz because the appointment stated that Plaintiff was scheduled to be seen about wrist braces rather than knee braces. Plaintiff was then directed to return to the clinic later that day with his Transcutaneous Electrical Nerve Stimulator ("TENS") Unit, which had been prescribed to him by a physical therapist for his lower back pain. Plaintiff alleges that when he returned later in the day, he was told that his TENS Unit was being revoked.

4

Plaintiff claims that the revocation was initiated by PA Switz as retaliation for the earlier disagreement.

### E.  September 2011 Tramadol Prescription

Later in 2001, on September 24, 2011, CO Kemp came to Plaintiff's cell and told Plaintiff that he had to sign a form stating that he had refused to take his medication that morning.  Plaintiff did not sign the form and stated that his medication was prescribed as needed and that it was not mandatory that he take it. On the medical refusal form, CO Kemp wrote "I ain't going" as Plaintiff's reason for refusal of the medication. On September 26, 2011, Dr. Sidorowicz discontinued Plaintiff's medication.  The apparent reason for the failure to provide Plaintiff with the medication was that he had refused to take it for two consecutive days. Plaintiff met with Dr. Sidorowicz on September 29, 2011 where Dr. Sidorowicz stated that he was "confused" regarding the medication because Plaintiff had signed a medical refusal form. Dr. Sidorowicz reinstated Plaintiff's medication on September 29, 2011.

## II.  Discussion

### A.  Claims against CO Kemp Voluntarily Dismissed

Plaintiff filed a letter with the Court requesting to voluntarily discontinue the action as against C.O. Kemp. Docket No. 53. Accordingly, Plaintiff's claims against C.O. Kemp are dismissed.

### B.  Claims for Declaratory & Injunctive Relief

In deciding a motion to dismiss brought under Fed. R. Civ. P. 12(b)(1) as well as other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *United States ex rel Kreindler & Kreindler v.*

*United Technologies Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993) (internal citation and

quotation marks omitted).  "A case is properly dismissed for lack of subject matter jurisdiction

under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When a case

becomes moot, the federal courts lack subject matter jurisdiction over the action." *In re

Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999).

"[A]n inmate's transfer from a prison facility generally moots claims for declaratory and

injunctive relief against officials of that facility."  *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d

Cir. 2006).  Since the filing of his Complaint, Plaintiff has been transferred from Sullivan

Correctional Facility to Auburn Correctional Facility. All Defendants are either currently or

formerly employed at Sullivan, and none are currently employed at Auburn, where Plaintiff is

now incarcerated. Therefore, Plaintiff's claims for declaratory relief as against all Defendants are

moot and therefore dismissed.[4]  *See also Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996).

### C.  Motion to Dismiss Standard/Pro Se Standard

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for "failure to state a claim

upon which relief can be granted," dismissal is proper unless the complaint "contain[s] sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)); accord *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the

purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint

---

[4] Plaintiff additionally fails to address this argument and therefore "apparently concedes that the claim fails, as evidence by his lack of opposition." *Wasserman v. Maimonides Medical Ctr.*, 970 F.Supp. 183, 192 (E.D.N.Y. 1997).

as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The court should accept as true the facts in the complaint "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013). The court should read pro se complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally."). Even so, "pro se plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "In order to justify the dismissal of the plaintiffs' *pro se* complaint, it must be beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief." *Lerman v. Bd. of Elections*, 232 F.3d 135, 139–40 (2d Cir. 2000) (internal citations, quotation marks and footnote omitted), *cert. denied*, 533 U.S. 915, 121 S.Ct. 2520, 150 L.Ed.2d 692 (2001).

### D.  Documents Considered on Motion to Dismiss

The materials that may be considered on a motion to dismiss are limited to "the facts asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Courts may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). One way a document may be deemed incorporated by reference is where the complaint "refers to" the document. *EQT Infrastructure Ltd. v. Smith*, 861 F. Supp. 2d 220, 224 n. 2 (S.D.N.Y. 2012). Conversely, when documents are included on a motion to dismiss that do not fall into these categories, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted). "Where . . . 'exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein.'" *Zappulla v. Fischer*, No. 11 Civ. 6733(JMF), 2013 WL 1387033, at *1 (S.D.N.Y. Apr. 5, 2013) (citing *Wilson v. N.Y.C. Police Dep't,* No. 09 Civ. 2632(PAC)(HBP), 2011 WL 1215031, at *6 (S.D.N.Y. Feb. 4, 2011))

Generally, "'when matters outside the pleadings are presented in . . . a 12(b)(6) motion,' a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24,

25 (2d Cir. 1988)).[5]  Defendants argue that the Court should not consider the fifty-eight exhibits that Plaintiff attached to his Opposition to the Motion to Dismiss.

In Plaintiff's Amended Complaint, he cited forty-four exhibits by number but did not attach any documents to his Amended Complaint. Without anything further, the fact that Plaintiff refers to exhibits is enough for them to be "incorporated by reference" so that they may be considered on a motion to dismiss. Further, Defendants fail to make clear that the exhibits were excluded at the direction of Judge Briccetti.[6] In light of the fact that Plaintiff referred to exhibits in his Complaint and was directed not to include them at the time, and the Court's obligation to construe a *pro se* plaintiff's complaint liberally, the Court will consider the forty-four exhibits Plaintiff referred to in his Amended Complaint in determining the motion to dismiss. Of the additional fourteen exhibits Plaintiff attached to his opposition but did not refer to in his Amended Complaint, the Court will consider only Exhibit 55, which is the grievance Plaintiff filed on January 28, 2011 regarding the suspension of his kosher diet. When a court considers

---

[5] Defendants note that "[i]t is a basic principle that a complaint may not be amended by the plaintiff's brief lied in opposition to a motion to dismiss." *Connolly v. Havens*, 763 F.Supp. 6, 8 n. 2 (S.D.N.Y. 1991). Further, Defendants state that although the Court is "obligated to construe a pro se complaint liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), "[t]he procedural latitude granted to pro se litigants . . . 'typically does not extend so far as permitting a plaintiff to supplement the claims in his complaint with additional allegations in his motion papers.'" *Zappulla v. Fischer*, No. 11 Civ. 6733(JMF), 2013 WL 1387033, at *2 (S.D.N.Y. Apr. 5, 2013) (quoting *Salemo v. Murphy*, No. 11 Civ. 2525(TPG), 2012 WL 4714765, at *2 (S.D.N.Y. Sept. 27, 2012)); *but see Brooks v. Jackson*, No. 11 Civ. 6627(JMF), 2013 WL 5339151, at *3 (S.D.N.Y. Sept. 23, 2013) ("because a pro se plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a pro se plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint."). Here, however, Plaintiff does not make additional *assertions* or *allegations* in his opposition papers but rather attaches additional documents that were not included in his Amended Complaint.

[6] This case was initially assigned to Judge Briccetti.  It was reassigned to Judge Roman on July 17, 2013. In a letter dated January 16, 2013, Plaintiff requested that the Court direct the correctional facility to allow him to make copies of his exhibits to include with his complaint free of cost because he was proceeding in forma pauperis ("IFP"). Doc. 8. In response, Judge Briccetti wrote, "Although plaintiff is proceeding [IFP], being granted IFP status only relieves plaintiff of his obligation to pay the filling fee; it does not entitle him to unlimited copies from the court or the correctional facility." *Id*.

9

documents that are outside the four corners of the complaint, it is not required to accept as true

any facts alleged in the complaint that are contradicted by the documents considered. *See NECA–*

*IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 149 n. 1 (2d Cir. 2012),

*cert. denied*, 133 S.Ct. 1624, 185 L.Ed.2d 576 (2013).

### E.  Statute of Limitations

"In section 1983 actions, the applicable limitations period is found in the 'general or

residual [state] statute [of limitations] for personal injury actions.'" *Pearl v. City of Long Beach*,

296 F.3d 76, 80 (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). New York law

provides a statute of limitations of three years for claims brought pursuant to 42 U.S.C. §1983, as

found in the residual personal injury statute, Civil Practice Law and Procedure ("CPLR")

§214(5). *See Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). Accrual of the action is

governed by federal law, which provides that the statute of limitations begins to run "when the

plaintiff knows or has reason to know of the injury which is the basis of his action." *Id* (citing

*Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)). Recently, in *Gonzalez v. Hasty*,

651 F.3d 318 (2d Cir. 2011), the Second Circuit held that the statute of limitations in a civil

action brought by an inmate should be tolled during the period of time it takes for the prisoner to

exhaust his or her administrative remedies.

Plaintiff's first claim against Nurse Miller and Dr. Sidorowicz is based on falsification of

a medical report and discontinuance of Plaintiff's tramadol prescription on April 10, 2009.

Plaintiff's claim accrued on April 10, 2009 because that is the date on which Plaintiff became

aware of his injury.  Am. Compl. ¶11.  Plaintiff filed a grievance regarding the complained-of

conduct on June 22, 2009.  *Id* at ¶17.  The Central Office Review Committee (C.O.R.C.) issued a

final decision regarding such grievance on September 16, 2009. *Id*. The statute of limitations was

tolled from June 22 until September 16, or for eighty-six days.  The statute of limitations on Plaintiff's claims arising out of the allegedly false report and discontinuance of his tramadol prescription therefore expired on July 5, 2012.  Plaintiff filed his complaint on September 18, 2012.  Accordingly, these claims are barred by the statute of limitations.

Chronologically, Plaintiff's next claim is Dr. Sidorowicz's failure to reinstate Plaintiff's pain medication.  Plaintiff alleges in his Complaint that on July 14, 2009, Dr. Sidorowicz refused to reinstate Plaintiff's medication in retaliation for filing a grievance, and continued to refuse until October 30, 2009. Plaintiff's claim against Dr. Sidorowicz for inadequate medical care and retaliation accrued on July 14, 2009. Plaintiff filed a grievance regarding his medical care on September 9, 2009 and again on October 23, 2009. Am. Compl. ¶24-25. Final decisions regarding those grievances were issued by the C.O.R.C. on December 16, 2009 and April 7, 2010, respectively.  The grievance filed on October 23 complains of essentially the same treatment as the grievance filed on September 9.[7] The Second Circuit reasoned that the statute of limitations for an inmate exhausting his administrative remedies should be tolled because "'[t]he 'catch–22' . . . is self-evident: the prisoner who files suit . . . prior to exhausting administrative remedies risks dismissal based upon § 1997e; whereas the prisoner who waits to exhaust his administrative remedies risks dismissal based upon untimeliness.'" *Gonzalez*, 651 F.3d at 323 (quoting *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001)). Where a second grievance addressing the same issue if filed, the purpose of tolling the statute of limitations is no longer applicable. Therefore, the statute of limitations on Plaintiff's claim should be tolled only for the

---

[7] Plaintiff's September 9, 2009 grievance complained of "the blatant mistreatment, pusposely [sic] misleading information, and the deliberate indifference to my medical needs by certain staff here at Sullivan . . . ." Opp'n Ex. 11 p. 1. Plaintiff's October 23, 2009 grievance states that he is filing a grievance "again" due to an "ongoing problem with the medical department" and acknowledges that he has "filed numerous grievances on this issue." Opp'n Ex. 12 p. 1.

length of the first grievance, or from September 9 through December 16. Plaintiff's Complaint

was filed before the statute of limitations on that claim expired on October 20, 2012 and

therefore it is not barred by the statute of limitations.

### F.  Claims Against PA Switz

The only claim that Plaintiff brings against PA Switz was that she was involved in the

removal of Plaintiff's TENS Unit.  Plaintiff bases this allegation on the fact that Dr. Sidorowicz

was not working on the day Plaintiff's TENS Unit was confiscated and the nurse on call stated

that she was "just following orders," leaving Plaintiff to assume that PA Switz was the only

person who could have ordered the revocation.  "It is well settled in this Circuit that 'personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983.'" *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001)

(quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  Plaintiff himself notes that there is

no documentation or record of PA Switz ordering the removal of Plaintiff's TENS Unit.  Such

conclusory allegations do not rise to the level of stating a claim and therefore, Plaintiff's Eighth

Amendment and First Amendment retaliation claims against PA Switz are dismissed.

### G.  Eighth Amendment Claims

#### a.  Eighth Amendment Legal Standard

The Cruel and Unusual Punishments clause of the Eighth Amendment forms the basis of

a convicted prisoner's claim that he or she is not being provided adequate medical care. *Caiozzo*

*v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). To establish an Eighth Amendment claim arising

from inadequate medical treatment, a prisoner must show that there was a "deliberate

indifference to [a] serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Under this

standard, prison officials are required to ensure that prisoners receive adequate medical attention.

*Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "not every lapse in medical care is a constitutional wrong." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). To determine if a prisoner's Eighth Amendment rights were violated, courts apply a test with a subjective and an objective component: plaintiff must show that (1) objectively, the prison official's deprivation of medical care was "sufficiently serious [and] result[ed] in the denial of the minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 834 (internal citations omitted); and (2) subjectively, the prison official acted with a sufficiently culpable state of mind. *Id.*

The first requirement for a showing of an Eighth Amendment violation is that there was a deprivation of care that was sufficiently serious, which is determined by an objective test with two prongs. The first prong is whether the prisoner was actually denied adequate medical care. *Salahuddin*, 467 F.3d at 279. "[T]he prison official's duty is only to provide reasonable care," *id*, and thus, "prison officials who act reasonably [when responding to an inmate] cannot be found liable under the Cruel and Unusual Punishments Clause," *Farmer*, 511 U.S. at 845.  Conversely, liability may result where prison officials fail "to take reasonable measures" in response to a medical need. *Id* at 847.

The second prong of the objective test is whether the alleged deprivation of medical care was sufficiently serious. *Salahuddin*, 467 F.3d at 279. "[T]he prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks omitted); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) ("The standard for Eighth Amendment violations contemplates a condition of urgency that may result in degeneration or extreme pain." (internal quotation marks omitted)). The inquiry is "fact-specific" and "must be tailored to the specific circumstances of each case," *Smith v. Carpenter*, 316 F.3d 178, 185 (2d

13

Cir. 2003), meaning that "[i]n cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280. For instance, where a prisoner is receiving on-going treatment, but complains of a delay or interruption in such treatment, the "focus [is] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Smith*, 316 F.3d at 185.

The second requirement for an Eighth Amendment violation is that the violator acted with a "sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280.   In Eighth Amendment prison-conditions cases, a sufficiently culpable state of mind is "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. 825, 834 (1994) (internal quotation marks and citation omitted).  A prison official may only be found liable if "the official knows of and disregards an excessive risk to inmate health or safety." *Id* at 837.  In order to meet this standard, the "charged official [must] act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Farmer*, 511 U.S. at 836–37.

### b.  Analysis

The time frame of Plaintiff's claim for inadequate medical treatment that survives the statute of limitations runs from June 24, 2009 through October 30, 2009.[8] Plaintiff alleges an interruption of adequate treatment for a period of six months in 2009.[9] Although Plaintiff states in his Amended Complaint that medical staff refused to treat his back pain, the documents provided suggest otherwise. On September 17, 2009, physical therapy was prescribed for

---

[8] The statute of limitations for Plaintiff's claims is three years. Taking into consideration the 86 days during which the statute of limitations was tolled, the earliest conduct of which Plaintiff may complain is on June 24, 2012.

[9] Plaintiff notes several times in his Complaint that the medical treatment was interrupted and he was in extreme pain for "over six months." Am. Compl. ¶¶12, 25, 67, 69, 70.  Plaintiff states that Dr. Sidorowicz "reluctantly" reinstated Plaintiff's pain medication on October 30, 2009. *Id* at ¶34.

Plaintiff's back pain. Opp'n Ex. 4 p. 10.  On September 21, 2009, Plaintiff refused to take

Robaxin because he stated that it "doesn't work" and on September 24, 2009, Plaintiff refused

Robaxin, Ibuprofen, Naprosyn, Feldene, and Tylenol because he wanted only "strong

medication." *Id.* at 11. The Court recognizes that as Plaintiff states in his claim, his pain was

"excruciating" and "crippling" at times, however, "[t]he prisoner's right is to medical care - not

the type or scope of medical care which he personally desires. A difference of opinion between a

physician and a patient does not give rise to a constitutional right or sustain a claim under §

1983." *Gonzales v. Wright*, 665 F. Supp. 2d 334, 347 (S.D.N.Y. 2009) (quoting *U.S. ex rel.*

*Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir. 1970)); *see also Sonds v. St. Barnabas Hosp.*

*Correctional Health Svs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("disagreements over

medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for

specialists or the timing of their intervention, are not adequate grounds for a Section 1983

claim."); *Wright v. Genovese*, 694 F.Supp.2d 137, 160 (N.D.N.Y. 2010) ("Differences in opinion

between a doctor and an inmate patient as to the appropriate pain medication clearly do not

support a claim that the doctor was deliberately indifferent to the inmate's serious medical

needs."); *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (no Eighth Amendment claim against

treating physician who saw plaintiff on 17 occasions over a 3 month period, prescribed pain

relievers, and muscle relaxants for plaintiff suffering from back pain). Plaintiff went to sick call

and was seen by medical personnel on at least thirteen occasions for his back pain and related

issues between June 24, 2009 and October 30, 2009. Opp'n Ex. 4 pp. 6-12. Plaintiff, therefore,

fails to establish the first prong of the objective test, and his Eighth Amendment claim fails.[10]

---

[10] Although Plaintiff claims that some of his medical reports were falsified, he does not allege that Defendants
falsified the records stating that he refused all forms of treatment other than tramadol. *See Espinal v. Goord*, No. 00
Civ. 2242(AJP), 2001 WL 476070, at *15 n. 51 (S.D.N.Y. May 7, 2001).

Similarly, the two days in September 2011 that Plaintiff was denied his pain medication do not rise to the threshold of stating an Eighth Amendment deliberate indifference claim. Even if being without medication for three days can be considered a sufficiently serious deprivation to establish the objective prong, *see, e.g.*, *Clay v. Kellmurray*, 456 Fed. App'x 46, 47 (2d Cir. 2012), the fact that Dr. Sidorowicz reinstated Plaintiff's pain medication shortly after a discussion with Plaintiff in which it was determined that there was a misunderstanding clearly demonstrates that the subjective prong of deliberate indifference is not satisfied.

Plaintiff also claims that his tramadol prescription should have been provided as a pill rather than crushing the medication. Although there are inconsistencies in the documents provided by Plaintiff regarding whether he was receiving tramadol immediate release or regular tramadol, Plaintiff does not allege any harm from the fact that his prescription was given to him crushed rather than as a pill. *See Black v. Farago*, Civil Action No. 9:07-cv-1194 (GLS/RFT), 2008 WL 4793712, at *4 (N.D.N.Y. Oct. 30, 2008) (prisoner plaintiff failed to show any harm from crushing medication). Although a court may issue an injunction to prevent future harm, *see Helling v. McKinney*, 509 U.S. 25, 33 (1993), Plaintiff here is not entitled to declaratory and injunctive relief. Plaintiff claims that there are dangers that may arise from such consumption, but Plaintiff's Complaint does not allege that he suffered any harm, and thus the Court can provide no relief.

### H.  Kosher Meals

Plaintiff alleges that on January 13, 2011, DSP Malin and DSA Lilley suspended his kosher diet without explanation and in retaliation for the grievances filed by Plaintiff against the medical department.  Plaintiff claims that the depravation of his religious diet was a violation of his due process rights, as he was not given notice or a hearing prior to the cancellation of his

16

religious diet. In his opposition, Plaintiff states that he is not claiming to have a liberty interest in receiving kosher meals but rather, once he was given kosher meals, he was entitled to due process before his kosher diet was suspended.

In order to show a violation of a due process right, a plaintiff must demonstrate that he or she has an actual liberty or property interest protected by the due process clause and was deprived of that interest without adequate process. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."); *see also Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000).

In order to claim a constitutionally protected property right, a plaintiff must have a "legitimate claim of entitlement." *Id* at 569. An inmate has no legitimate claim of entitlement in receiving kosher meals. *See Russell v. Wilkinson*, 79 F. App'x 175, 178 (6th Cir. 2003) ("In this case, [plaintiff] does not possess a constitutionally protected property interest in receiving kosher meals. Prison regulations allow an inmate to obtain such accommodations, but also place certain restrictions and availability on those accommodations. Ultimately, the decision to grant or deny an accommodation lies within the discretion of the prison warden."). Courts in this Circuit have similarly held that prisoners have no liberty interest in receiving kosher meals while incarcerated. *See Dove v. Broome County Correctional Facility*, Civil Action No. 9:10–CV–0002 (DNH/DEP), 2011 WL 1118452, at *12 (N.D.N.Y. Feb. 17, 2011) ("While the provision of a kosher diet may implicate free exercise concerns under the First Amendment and the RLUIPA, it does not rise to the level of a cognizable liberty interest giving rise to the procedural safeguards guaranteed under the Fourteenth Amendment."); *see also Arce v. Walker*, 139 F.3d 329, 334 (2d Cir. 1998) ("With respect to interests arising directly under the Due Process Clause, the Supreme

17

Court has narrowly circumscribed its scope to protect no more than the [sic] the most basic liberty interests in prisoners.").

To the extent that Plaintiff claims that his due process rights were violated because of a liberty interest created by state statutes or regulations, such claim also fails. Although Plaintiff concedes that he did not intend to bring a claim solely based on violations of the DOCCS's rules and regulations, to the extent that his Amended Complaint may be read to assert such a claim, it must fail. The Second Circuit has made clear that Section 1983 claims based on violations of prison regulations cannot stand. *See Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) ("[R]egardless of state procedural guarantees, the only process due an inmate is that minimal process guaranteed by the Constitution[.]").

Plaintiff's Amended Complaint does not specifically claim a violation of his First Amendment free exercise right regarding the suspension of his kosher diet. However, a *pro se* complaint must be read "to raise the strongest arguments that they suggest." *Pabon*, 459 F.3d at 248. "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003), and it is clearly established that "prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." *Id.* at 597 (citing *Kahane v. Carlson*, 527 F.2d 492 (2d Cir. 1975)). At this stage of the litigation, the Court finds that, reading Plaintiff's Amended Complaint in the most favorable light, it states a free exercise claim.[11]

---

[11] Defendants claim that Plaintiff may not assert a new claim in opposition to the motion to dismiss. The Court does not purport to substantiate a new claim brought in opposition to the motion to dismiss. Instead, the Court, reading

18

## I.  Retaliation

The Second Circuit urges caution when addressing retaliation claims brought by prisoners because "claims by prisoners that particular administrative decisions have been made for retaliatory purposes are prone to abuse. Virtually every prisoner can assert such a claim as to every decision which he or she dislikes." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). Therefore, courts should "examine prisoners' claims of retaliation with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). Accordingly, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty*, 713 F.2d at 13. To survive a motion to dismiss, a prisoner asserting retaliation claims must "allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001). Filing grievances is a protected activity and thus Plaintiff meets the first prong of the test. *Davis*, 320 F.3d at 352-53.

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis*, 320 F.3d at 353. "In order to satisfy the causation requirement, allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Id* (citing *Dawes*, 239 F.3d at 492 (internal quotation marks and citation omitted)). To establish a causal connection, "[a] plaintiff must allege facts suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take

---

Plaintiff's Amended Complaint in the most favorable light as it must, Plaintiff states a First Amendment free exercise claim.

action against him." *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal

citations, alterations, and quotation marks omitted). Factors that may be considered when

determining whether there is a causal connection include "(1) the outcome of any hearing

concerning the allegedly retaliatory charges; (2) the inmate's prior disciplinary record; (3) any

statements made by the defendant concerning his motivation; and, (4) the temporal proximity

between the protected activity and the defendant's adverse action." *Williams v. Muller*, No. 98

CIV. 5204(BSJ), 2001 WL 936297, at *3 (S.D.N.Y. Aug. 17, 2001) (citing *Colon v. Coughlin*,

58 F.3d 865, 872-73 (2d Cir. 1995)).

　　In Plaintiff's opposition, he states that there is evidence of three cases of retaliation

against him: the false report filed by Nurse Miller, a report that led to the suspension of

Plaintiff's kosher diet, and a report filed by CO Kemp stating that Plaintiff refused to take his

tramadol.  The first claim is barred by the statute of limitations (*see supra* section II.D.), the third

claim was voluntarily dismissed by Plaintiff (*see supra* section II.A.). However, Plaintiff's

Amended Complaint alleges retaliation claims against Dr. Sidorowicz, PA Switz,[12] NA Eggler,

DSA Lilley and DSP Malin, and therefore the Court will address all of the claims set forth in the

Amended Complaint.

　　　**a.  Dr. Sidorowicz**

　　Plaintiff alleges that after he filed a grievance in June 2009 concerning the

discontinuation of his tramadol prescription, Dr. Sidorowicz retaliated against him by failing to

restore Plaintiff's medication in July 2009. There is no causal connection between Plaintiff's

grievance and the failure to reinstate Plaintiff's medication. The medication was initially

---

[12] The Court already addressed the lack of any allegation regarding the involvement of PA Switz.  *See supra* Section I.E.

discontinued two months prior to Plaintiff's grievance, in April 2009. Dr. Sidorowicz failed to reinstate Plaintiff's medication before and after Plaintiff's grievance, and thus there was no change in behavior after the grievance. Where that is the case, it is impossible to show that the failure to reinstate Plaintiff's medication was a result of his grievance. *See Sledge v. Bernstein*, No. 11 Civ. 7450(PKC)(HBP), 2012 WL 4761582, at *7 (S.D.N.Y. Aug. 2, 2012). Indeed, Dr. Sidorowicz eventually reinstated Plaintiff's tramadol prescription despite Plaintiff filing an additional two grievances regarding of Dr. Sidorowicz's conduct. Therefore, Plaintiff does not adequately allege a retaliation claim against Dr. Sidorowicz.

### b.  NA Eggler

Plaintiff's Amended Complaint states that NA Eggler submitted false statements and reports during a grievance investigation as retaliation for the grievances that Plaintiff filed against the medical department. Plaintiff alleges that NA Eggler stated that Plaintiff was receiving regular tramadol but in reality, he was receiving tramadol immediate release. "[A] prison inmate has no general constitutional right to be free from being falsely accused in a . . . report. There must be more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997); *see also Cole v. Fischer*, No. 07 Cv. 11096(BSJ), 2009 WL 1514699, at *6 (S.D.N.Y. May 29, 2009). As a result of the allegedly false reports, the grievance committee ultimately decided against Plaintiff. Although Plaintiff did not prevail, the allegation that the statement made to the grievance committee was false makes this factor less important in the Court's determination. The temporal proximity is particularly relevant since the alleged retaliatory action was taken directly in response to a grievance. At this point, the Court is not inclined to dismiss Plaintiff's retaliation claim against NA Eggler due to

the conflicting information regarding the type of medication that Plaintiff was receiving and the varying effects that crushing the two medications could ostensibly produce.

### c.  DSA Lilley & DSP Malin

Plaintiff claims that DSA Lilley and DSP Malin retaliated against him for filing grievances by revoking his kosher diet. The causal connection between Plaintiff's grievances and the suspension of his kosher diet is lacking.  For one, DSA Lilly and DSP Malin are not members of the medical department, suggesting that there is no reason why they would retaliate for Plaintiff's grievances against the medical department.[13] Further, the grievance committee upheld the decision to suspend Plaintiff's kosher diet.

### J.  Qualified Immunity

"In this Circuit, a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment." *Sledge v. Bernstein*, No. 11 Civ. 7450(PKC)(HBP), 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (a defense of qualified immunity in a motion to dismiss can only be sustained if plaintiff cannot state any facts that would prevent the application of qualified immunity). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011); *see also Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982) ("Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar

---

[13] Plaintiff's suggestion that DSA Lilley retaliated against Plaintiff because her mother worked in the medical department is conclusory and does not rise to the level of stating a claim.

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19. It is within the Court's discretion to determine the order in which the two prongs are analyzed. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Plaintiff's only surviving claims are a free exercise claim and a retaliation claim. None of the defendants implicated in the surviving claims are entitled to qualified immunity here. It is clearly established that inmates have a right to a meal plan in accordance with their sincerely held religious beliefs. Additionally, it is clearly established that prison personnel may not submit false reports in retaliation against prisoners for exercising their right to file a grievance.

## Conclusion

In conclusion, the Court GRANTS Defendant's motion to dismiss IN PART as follows: Plaintiff's Eighth Amendment claims, Fourteenth Amendment due process claims, retaliation claims against Dr. Sidorowicz, NSA Lilley, and DSP Malin, all claims against PA Switz, and all claims against CO Kemp are DISMISSED. The Clerk of Court is directed to terminate the motion, Docket No. 37.

Dated:     February 14, 2014             SO ORDERED:
           White Plains, New York

                                         _____ 2/14/14
                                         NELSON S. ROMÁN
                                         United States District Judge

23