UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HALBERT TURNER,

     Plaintiff,        12-cv-7048 (NSR)

 -against-

               OPINION AND ORDER

WLADYSLAW SIDOROWICZ, GENEVIEVE
SWITZ, GINGER EGGLER, SHARON LILLEY,
HOLLY MILLER, LYNN LILLEY, LESLIE
MALIN, and SHAWN KEMP
Individually and in their Official Capacities,

     Defendants.
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

  Halbert Turner, a state prisoner proceeding *pro se* ("Plaintiff"), brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights during his incarceration at Sullivan Correctional Facility ("Sullivan") against Sullivan employees Ginger Eggler, Nurse Administrator ("Eggler"); Lynn Lilley, Deputy Superintendent of Administration ("Lilley"); and Leslie Malin, former Deputy Superintendent of Programs ("Malin") (collectively, "Defendants").[1] Plaintiff asserts a retaliation claim against defendant Eggler and a free exercise claim against defendants Lilley and Malin. Before the Court is Defendants' Motion for Summary Judgment. For the following reasons, Defendants' motion is GRANTED.

---

[1] The remaining defendants (Wladyslaw Sidorowicz, Genevieve Switz, Sharon Lilley, Holly Miller, and Shawn Kemp) were dismissed by the Court's Order of February 18, 2014. *See* Opinion & Order dated February 14, 2014, ECF No. 56.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/18/2016

**PLAINTIFF'S FAILURE TO FILE A RULE 56.1 STATEMENT**

Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") requires a party moving for summary judgment to submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). Generally, the movant's asserted facts are deemed to be admitted unless specifically controverted by the statement served by the opposing party. Local Rule 56.1(c). Though *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), the Court has "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). "[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Id.* (internal quotation marks and citations omitted). *See also Vann v. Fischer,* No. 11 CIV. 1958 KPF, 2014 WL 4188077, at *6 (S.D.N.Y. Aug. 25, 2014), *reconsideration denied*, No. 11 CIV. 1958 KPF, 2015 WL 105792 (S.D.N.Y. Jan. 7, 2015).

In the instant case, Plaintiff has failed to file a Local Rule 56.1 statement. However, Plaintiff submits a number of exhibits and affidavits to support his arguments. (*See* Attachments to ECF No. 102.) These documents only contain facts relevant to the free exercise claim against defendants Lilley and Malin. Plaintiff has wholly failed to submit any evidence or arguments with regards to the retaliation claim against defendant Eggler. Accordingly, despite Plaintiff's failure to submit a statement pursuant to Local Rule 56.1, in light of Plaintiff's *pro se* status, the

Court will exercise its discretion to review the record independently in consideration of Plaintiff's free exercise claims.[2] As to the retaliation claim, however, the Court will deem admitted Defendants' facts as asserted in their Local Rule 56.1 statement. After conducting this review, the Court has confirmed that the following facts are undisputed.

## FACTUAL BACKGROUND

Plaintiff is an inmate currently confined in Upstate Correctional Facility. (ECF No. 108.) From October 29, 2003 until February 26, 2013, Plaintiff was incarcerated in Sullivan Correctional Facility ("Sullivan"). (Defendant's Statement Pursuant to Local Rule 56.1 ("Defs.' 56.1"), ECF No. 94, ¶ 2.)

### I. *Retaliation Claim Against Defendant Eggler*

On October 19, 2010, Plaintiff filed a grievance in Sullivan, in which he complained that the Tramadol medication he was receiving from the medical department at Sullivan was improperly administered. (Defs.' 56.1, ¶ 3.) In his grievance, Plaintiff claimed that he was receiving crushed "Tramadol Immediate Release," which he alleged should not be crushed as the crushing of Tramadol Immediate Release can result in dangerous side effects. (Id. ¶ 4.) Plaintiff's grievance was forwarded to defendant Eggler by the Inmate Grievance Resolution Committee ("IGRC") at Sullivan, and defendant Eggler was assigned to provide a response and

---

[2] Plaintiff asserts a number of facts in his memorandum of law that are not supported by any materials in the record. Under Federal Rule of Civil Procedure 56(c), a court may not consider statements in legal memoranda as part of the factual record on summary judgment. *See* Fed. R. Civ. P. 56(c)(1). In determining whether a question of material fact exists, the Court will therefore not consider any unsupported factual assertions. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (holding that "Rule 56(e) [] requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial'") (internal citations and quotation marks omitted); *see also D'Alessandro v. Woodloch Pines, Inc.*, No. 99 Civ. 1472(SAS), 2000 WL 28166, at *1 (S.D.N.Y. Jan. 14, 2000) ("If the non-moving party brings forward 'any evidence ... from any source from which a reasonable inference could be drawn in favor of the non-moving party, summary judgment is improper'") (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)).

opinion to the IGRC regarding the administration of Plaintiff's medication. (*Id.* ¶ 10.) Defendant Eggler is the Nurse Administrator of the medical department in Sullivan and has held this position since October 2010. (*Id.* ¶ 8.) Defendant Eggler reviewed Plaintiff's Drug Education Report and medical profile and drafted a memorandum to the IGRC, dated October 20, 2010, attaching both the report and profile. (*Id.* ¶¶ 12, 14, 16-17.) Shortly thereafter, defendant Eggler learned that she had been misinformed about the policy for administering Plaintiff's medication and accordingly submitted a second memorandum to the IGRC, also dated October 20, 2010, which set out her new finding. (*Id.* ¶¶ 20-22.)  Plaintiff alleges that defendant Eggler provided false information to the IGRC in retaliation for Plaintiff's previous grievances against medical department staff. (Am. Compl. ¶¶ 41, 73.)

    II. *First Amendment Free Exercise Claim Against Defendants Lilley and Malin*

On April 4, 2008, Plaintiff submitted a Change of Religious Designation Form changing his religious affiliation from Protestant to Messianic Jew, which was signed by two facility chaplains on April 6, 2008. (Defs.' 56.1, ¶ 37; Pl.'s Exhibit A, ECF No 102.) Shortly thereafter, Plaintiff registered for the Kosher diet meal plan, which is called the Cold Alternative Diet ("CAD"). (Defs.' 56.1, ¶ 40.)  The CAD is a dietary meal plan for inmates whose religious beliefs require them to maintain a special diet, including inmates who are Jewish or Orthodox Jewish, and also may be provided on a case-by-case basis to other inmates who request it. (*Id.* ¶ 41.) The cost of a CAD meal is substantially more expensive than the cost of a regular meal. (*Id.* ¶ 43.)

Inmates who wish to participate in the CAD must have their eligibility determined by the Chaplain, review and sign the CAD procedures and attendance agreement, and obtain approval from the Deputy Superintendent of Program Services. (Pl.'s Exhibit F.) The CAD procedures

and attendance agreement states that "meal attendance and strict adherence" to the CAD are mandatory, and an inmate found to be not in compliance with these standards may have their participation in the CAD suspended. (Pl.'s Exhibit H.) Inmates on the CAD are not permitted to take food items from the regular meal line, nor are they permitted to swap or trade for regular meal items with other inmates. (Defs.' 56.1, ¶ 42.) At Sullivan, CAD meals are individually wrapped and served from a designated cart brought to the housing block, whereas regular meals are served in a line that inmates go through to pick up their food. (*Id*. at ¶¶ 46-47.)

On July 4, 2008, Correction Officer ("C.O.") Albert wrote in the warning log in Sullivan that he observed Plaintiff taking non-Kosher food. (*Id*. ¶ 50; Pl.'s Exhibit B.) The warning log is a logbook where correction officers record warnings they issue to inmates for minor infractions, which is done for the purpose of inter-shift communication between correction officers. (Defs.' 56.1, ¶ 50.) C.O. Albert then informed defendant Lilley, who at that time was the Deputy Superintendent of Administration at Sullivan, of Plaintiff's infraction, and subsequently, defendant Lilley issued a memorandum to Plaintiff advising him that he is not permitted, while on CAD, to swap, trade, or eat items from the regular meal line. (*Id*. at ¶¶ 50-51; Pl.'s Exhibit C.)

On March 1, 2009, C.O. Albert once again logged an infraction that Plaintiff took food from the regular meal line. (Defs.' 56.1, ¶ 53; Pl.'s Exhibit D.) On this occasion, C.O. Albert issued Plaintiff a misbehavior report, and a hearing was held concerning the violating. (Defs.' 56.1, ¶¶ 54-55.) At the hearing, Plaintiff was found not guilty, and the misbehavior report was expunged from Plaintiff's disciplinary record. (*Id*. at ¶¶ 56-57.)

Almost two years later, in January 2011, defendant Lilley received a memorandum from C.O. Arthur Leaney-Levinson conveying that he had observed Plaintiff taking food from the regular meal line. (*Id*. ¶ 59.) Defendant Lilley spoke to C.O. Leaney-Levinson to discuss the

officer's observations. (*Id*. ¶ 60.) Thereafter, defendants Lilley and Malin issued Plaintiff a memorandum explaining that Plaintiff was observed eating food off the regular food line; that Plaintiff had been previously warned not to do so; that Plaintiff was suspended from the CAD due to his failure to adhere to the diet; and that if Plaintiff wished to re-establish his eligibility, he could go through a re-evaluation process. (*Id*. ¶¶ 61-62, 66-67; Pl.'s Exhibit E.) Plaintiff concedes that he ate items (specifically, cake) from the regular food line on occasion but only when "seconds" were called by the officer on duty or the pantry worker. (Declaration of Roger Forbes, ECF No. 102.) Plaintiff has not attempted to re-establish his eligibility for the CAD. (Defs.' 56.1, ¶ 75.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F.

6

App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Moreover, "[a non-moving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd*, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003)).

**DISCUSSION**

*I. Retaliation Claim Against Defendant Eggler*

Plaintiff's first claim alleges that defendant Eggler submitted false statements in her report to IGRC in retaliation for Plaintiff having filed grievances. However, because Plaintiff does not address this claim in either his memorandum or affidavits and exhibits submitted in opposition to Defendants' motion for summary judgment, the Court deems him to have abandoned this claim. *See Jackson v. Fed. Express,* 766 F.3d 189, 195 (2d Cir. 2014) ("a partial response arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims"). This result is warranted regardless of Plaintiff's *pro se* status, as Plaintiff has shown that he is capable of opposing motions, submitting evidence, and communicating issues with the Court. *See Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400 (S.D.N.Y. 2012) (holding that a *pro se* inmate abandoned his § 1983 claim that he was scalded by hot water in shower at county jail where he did not address that claim in either of his affidavits in response to county defendants' motions for summary judgment); *Smith v. N.Y.C Dep't of Educ.,* No. 09–CV–9256, 2011 WL 5118797, at *6 n. 8 (S.D.N.Y. Oct. 28, 2011) (finding that *pro se* plaintiff abandoned claims he did not address in his opposition to summary judgment); *Lipton v. Cnty. of Orange,* 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004) (noting that courts "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed"); *Ahmad v. Port Auth. of N.Y. & N.J.,* No. 09–CV–3134, 2011 WL 7080691, at *3 n. 9 (E.D.N.Y. Dec. 7, 2011), *adopted by* 2012 WL 194965 (E.D.N.Y. Jan. 23, 2012) (deeming *pro se* plaintiff's claims abandoned when he did not address those claims in his opposition to summary judgment and where there was no basis for the claims in the record).

In any event, Plaintiff failed to establish a retaliation claim against defendant Eggler. In order to sustain a First Amendment retaliation claim under Section 1983, a prisoner must demonstrate the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (citing *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Though the filing of grievances is protected conduct, Plaintiff fails to establish any adverse action. In order to adequately establish an "adverse action," Plaintiff must show that he was subject to "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill*, 389 F.3d at 381 (internal citations omitted). The Second Circuit has explained that fear is a key aspect in whether an inmate has suffered adverse action, specifically when fear is used as a means to stifle a prisoner's ability or desire to file lawsuits or grievances. *See Morales v. Mackalm*, 278 F.3d 126, 131-32 (2d Cir. 2002) (reversing the dismissal of a complaint alleging that the transfer of prisoner to a psychiatric facility was an adverse action taken in retaliation for filing a grievance). Plaintiff has failed to submit any evidence regarding the retaliation claim, and after examining the record, it is clear that Plaintiff continued to file grievances against the medical department, including further grievances concerning his medication, after defendant Eggler issued the allegedly retaliatory memoranda in October 2010. (*See* Declaration of Jeffrey Hale, ECF No. 97, Exhibit A.) Accordingly, Plaintiff was not deterred by defendant Eggler's conduct, and Plaintiff's retaliation claim must be dismissed.

II.  *First Amendment Free Exercise Claim Against Defendants Lilley and Malin*

Plaintiff's second claim alleges a violation of his free exercise of religion under the First Amendment. In Plaintiff's memorandum of law, he additionally asserts a due process claim, an equal protection claim, and a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") concerning the suspension of the CAD.  (Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opposition"), ECF No. 102, at 12.) This Court dismissed Plaintiff's due process claim in its Opinion & Order dated February 14, 2014. (*See* ECF No. 56.) As to the equal protection claim, although the Court must read a *pro se* plaintiff's complaint to raise the strongest arguments it presents, the Court need not consider claims that are raised for the first time in a *pro se* plaintiff's papers in opposition to a motion. *See Cohen v. New York*, 481 F. App'x 696, 697 (2d Cir. 2012) (summary order). The Amended Complaint does not contain any allegation the Plaintiff was treated differently from any other group of inmates and therefore cannot be construed to allege an equal protection claim. (*See* Amended Complaint, ECF No. 11.) The Court will therefore not consider Plaintiff's equal protection claim, as it was raised for the first time in Plaintiff's motion papers in opposition to summary judgment. *See Shah v. Helen Hayes Hosp.*, 252 Fed.Appx. 364, 366 (2d Cir. 2007) (refusing to consider plaintiff's claims under the Fifth and Fourteenth Amendments because they were only asserted in motion papers and a "party may not use his or her opposition to a dispositive motion as a means to amend the complaint"); *Salemo v. Murphy*, No. 11–CV–2525, 2012 WL 4714765, at *2 (S.D.N.Y. Sept. 27, 2012) (internal citation omitted) ("[A]lthough courts afford *pro se* plaintiffs a fair measure of procedural latitude, this latitude typically does not extend so far as permitting a plaintiff to supplement the claims in his complaint with additional allegations in his motion papers.").

10

The Court will additionally not consider Plaintiff's RLUIPA claim as it is moot. Under RLUIPA, Plaintiff could only recover declaratory and injunctive relief. Specifically, RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities. *Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014); *see also Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir.2013) (per curiam) (citing *Sossamon v. Texas*, 563 U.S. 277, 280 (2011)). Plaintiff's RLUIPA claim therefore must be construed as a claim for injunctive and declaratory relief. As a result, the RLUIPA claim is subject to dismissal because Plaintiff is no longer incarcerated at Sullivan, where the alleged violations occurred. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility). Therefore, the Court will not consider Plaintiff's RLUIPA claim.[3]

As a result, Plaintiff's sole claim regarding the suspension of the CAD is a First Amendment free exercise claim. "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003), and it is clearly established that "prison authorities must accommodate the right of prisoners to receive diets consistent with their religious scruples." *Id*. at 597 (citing *Kahane v. Carlson*, 527 F.2d 492 (2d Cir. 1975)). However, the Second Circuit has acknowledged that, "although prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."

---

[3] The RLUIPA claim is also not specifically asserted in the Amended Complaint. However, the facts as alleged may amount to a RLUIPA violation and therefore, the court should read the complaint "to raise the strongest arguments [it] suggests." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006). This is distinguishable from the equal protection claim, because the facts alleged in the Amended Complaint could not be construed to assert an equal protection claim. Nevertheless, the RLUIPA claim is dismissed as moot.

11

*Salahuddin*, 467 F.3d at 274 (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)) (internal citations and alterations omitted). Accordingly, the First Amendment protection afforded to inmates must be balanced with "the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford,* 352 F.3d at 588 (internal citations omitted).

Whether a prison official's conduct violates an inmate's First Amendment free exercise rights is judged "under a 'reasonableness' test less restrictive than that ordinarily applied": a regulation that burdens a protected right passes constitutional muster "'if it is reasonably related to legitimate penological interests.'" *O'Lone*, 482 U.S. at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). "Although *Turner* and *O'Lone* concerned the reasonableness of prison *regulations*, [the Second Circuit has] previously suggested that the analysis is the same as to an *individual decision* to deny a prisoner the ability to engage in some requested religious practice." *Ford*, 352 F.3d at 595 (internal citations omitted) (emphasis added). Thus, to prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest. *See Holland v. Goord*, 758 F.3d 215, 220-23 (2d Cir. 2014). The Second Circuit has not decided whether the substantial burden test remains viable in our Circuit following *Employment Division v. Smith*, 494 U.S. 872 (1990); however, the Court need not decide the issue because, even assuming the continued vitality of the substantial burden requirement and Plaintiff's satisfactory demonstration of the same, Defendants have shown that their actions were reasonably related to a legitimate penological interest.

To determine whether a prison official's conduct is reasonably related to legitimate penological interests, a court must consider:

> whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

*Holland*, 758 F.3d at 222-23 (citing *Turner*, 482 U.S. at 9-–91) (internal citation omitted). "The first *Turner* 'factor' is more properly labeled an 'element' because it is not simply a consideration to be weighed but rather an essential requirement." *Salahuddin*, 467 F.3d at 274 (internal citations omitted). The burden of showing an action is rationally related to legitimate governmental interests is relatively limited, and once met, "the burden remains with the prisoner to show that these [articulated] concerns were irrational." *Ford*, 352 F.3d at 595 (internal citations and quotations omitted).

Defendants put forth two legitimate governmental interests in revoking Plaintiff's CAD privileges: administrative and budgetary concerns. First, Defendants note that Plaintiff took items from the regular meal line on multiple occasions and therefore did not adhere to the kosher diet, despite numerous warnings. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Support"), ECF No. 95, at 22.) In response, Plaintiff asserts that many of the warnings were the result of allegedly false accusations. (Pl.'s Opposition at 15-16.) This assertion is irrelevant, however, because whether or not Plaintiff was falsely accused of eating food from the regular meal line in those instances, the warnings remained and demonstrated to Plaintiff that he was not permitted to eat from the regular meal line while on the CAD. Plaintiff concedes to having —and it is therefore undisputed that he—received these

13

warnings, whether they were warranted or not. (*See* Pl.'s Opposition at 2-4.) In addition, the CAD procedures and attendance agreement[4] states that "strict adherence" to the CAD is mandatory, and an inmate found to be not in compliance may have his participation in the CAD suspended. (Pl.'s Exhibit H.) Plaintiff concedes that he did not strictly adhere to the CAD when he took cake from the regular meal line on multiple occasions, and therefore, he violated the terms of the CAD agreement and accordingly had his CAD suspended.[5] (Pl.'s Opposition at 6.) As asserted by Defendants, the prison has a legitimate administrative interest in ensuring compliance with and uniform application of CAD procedures, especially in light of the "high level of deference" accorded to prison officials given the "intractable problems of prison administration." *Ford*, 352 F.3d at 595 (internal citations omitted).

Second, Defendants contend that the additional cost of a CAD meal creates a financial burden on the prison, which also constitutes a legitimate governmental interest for the suspension. "With regard to the first *Turner* factor, it is well established that [DOCCS] has a legitimate interest in cost-effectively meeting the religious dietary needs of multiple inmate groups." *Simmons v. Robinson*, No. 07 CIV 7383 DAB DFE, 2010 WL 5538412, at *10 (S.D.N.Y. Jan. 28, 2010), *report and recommendation adopted*, No. 07 CIV. 7383 DAB, 2011 WL 31066 (S.D.N.Y. Jan. 4, 2011). This interest is clearly implicated when a prisoner who claims that the CAD is necessary to meet his religious needs does not adhere to the diet despite being afforded the privilege. As Defendants note, when an inmate registers for the CAD but does not eat it or takes additional regular meal items, DOCCS incurs a substantial wasted cost for that inmate. (Defs.' 56.1, ¶ 7.) Plaintiff questions the legitimacy of this objective because CAD

---

[4] Though Plaintiff's signed agreement could not be located, Plaintiff concedes to have signed the agreement. (Pl.'s Exhibit H; Pl.'s Opposition at 5.)
[5] In other words, Plaintiff was attempting to have his cake and eat it too.

14

requires him to accept all items on the CAD tray, which at times includes packages of red meat that Plaintiff does not eat, and Plaintiff requested an alternative to the red meat, which would eliminate waste. (Pl.'s Opposition at 17.) However, contrary to Plaintiff's contention, "providing individualized meals to one or several inmates would involve a substantial increase in administrative costs, and would likely cause demands by other inmates for individualized meals, further increasing administrative costs." *Henry v. Schriro*, No. 10 CIV. 7573 SAS, 2011 WL 3370394, at *3 (S.D.N.Y. Aug. 2, 2011). Therefore, Defendants and DOCCS have a legitimate interest in conserving and fairly apportioning prison resources that further supports the reasonableness of the CAD suspension.

The second *Turner* factor does not weigh strongly in favor of either party. While Plaintiff himself admitted that he has the ability to, and in fact did, cook his own meals at Sullivan rather than eat the CAD, the Court recognizes this is not a complete, non-burdensome alternative to the CAD. (Deposition of Halbert Turner, ECF No. 106, Exhibit A at 43:22-44:6.)

With regard to the third *Turner* factor, it is clear that providing a CAD meal is a burden on prison resources, as detailed above. Had Defendants not suspended Plaintiff's CAD, their administrative resources would be additionally burdened as prison officials would be required to continue to monitor Plaintiff's compliance.

Finally, with regard to the fourth *Turner* factor, the Court must consider whether ready alternatives to the prison official's action exist; a ready alternative is one that "fully accommodates the prisoner's rights at de minimis cost to valid penological interests." *Turner*, 482 U.S. at 91. The burden is on the prisoner challenging the action, not on the prison officials, to show that there are obvious, easy alternatives to the action. *See O'Lone*, 482 U.S. at 350.

Plaintiff does not suggest another way to accommodate his request that does not implicate the legitimate penological interests discussed above.

Accordingly, the record before the Court does not reveal any disputed issues of fact relevant to Defendants' claims that legitimate penological interests justify the suspension of Plaintiff's CAD. As a result, Defendants' action cannot be said to have unreasonably burdened Plaintiff's religious beliefs. Notably, Plaintiff has not attempted to re-establish his eligibility for the CAD, despite being provided an opportunity to do so at multiple facilities.[6]

In sum, for the reasons discussed above, the Court concludes Plaintiff has not created a genuine issue of material fact with respect to his claim that defendants have violated his First Amendment right to the free exercise of his religion by suspending his CAD meals. Specifically, even assuming Plaintiff could show a substantial burden, Defendants have demonstrated that the suspension is reasonably related to legitimate penological objectives. Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment free exercise claim.

## CONCLUSION

Accordingly, Defendants' motion for summary judgment is GRANTED. The Clerk of the Court is respectfully requested to terminate the motion at ECF No. 93 and enter judgment for Defendants.

Dated: July 18, 2016  
White Plains, New York

SO ORDERED;

NELSON S. ROMÁN  
United States District Judge

---

[6] Plaintiff claims that he did not attempt to re-establish his eligibility because, shortly after his suspension from the CAD, all Messianic Jews were removed from the CAD and were no longer categorically eligible. (Pl.'s Opposition at 7.) However, it is clear that inmates who are not Jewish or Orthodox Jewish may request the CAD, and such requests are considered by the DOCCS Office of Ministerial Services on a case-by-case basis. (Reply Declaration of Lesley Malin, ECF No. 105, ¶ 3.) Thus, Plaintiff's contention does not excuse his failure to re-apply.